UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| REINA HERNANDEZ, | : | |
| | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Civil Action No.: 05-1707 |
| | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon Reina Hernandez's ("Plaintiff") appeal from the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After reviewing all of the submissions by both parties and for the reasons stated below, this Court finds that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**I. Background**

Plaintiff, born on November 20, 1960, has a twelfth grade education. She has worked as a receptionist, health aide, intake worker, personal assistant, and hostess. She alleges she has been disabled and unable to work since May 31, 2002, due to neck and lower back pain, asthma, chronic obstructive pulmonary disease, and hepatitis C.

### A. Procedural History

Plaintiff filed an application for DIB on June 25, 2002, alleging disability since May 31, 2002. Her application was initially denied. Pursuant to Plaintiff's request, a hearing was held on January 21, 2004, before Administrative Law Judge ("ALJ") Dean W. Determan, at which Plaintiff appeared with counsel and testified on her own behalf. ALJ Determan, in a decision dated February 25, 2004, found Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB. This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 31, 2005. Plaintiff filed this appeal before the Court on March 30, 2005.

### B. Factual History

#### 1. Evidence Prior to May 31, 2002

Medical records from July 2000 indicate that Plaintiff complained of lower abdominal pain and foul smelling urine. (R. at 175.) The records show that Plaintiff felt better after taking medication and had no other complaints. (Id.)

An upper gastrointestinal study conducted on July 25, 2000, showed Plaintiff had moderate chronic esophagitis, a sliding hiatal hernia, and mild chronic pan-gastroduodenitis. (R. at 148.) On September 7, 2000, another upper gastrointestinal study revealed that Plaintiff had moderate chronic esophagitis, a sliding hiatal hernia, and moderate chronic pan-gastroduodenitis. (R. at 138.) The study also showed that Plaintiff's esophageal ulcer was healed. (Id.) A needle biopsy on the same day indicated Plaintiff had mildly active hepatitis C. (R. at 150.)

In June 2001, Plaintiff underwent a physical exam which evaluated her appearance, thyroid, heart, lungs, abdomen, extremities, skin, back, and neurological functions. (R. at 168.)

Plaintiff tested normal in all categories. (Id.)

On March 5, 2002, Plaintiff was treated for shortness of breath. (R. at 204.) A physical exam of her head, neck, chest, heart, and abdomen revealed no irregularities. ( Id.) An x-ray revealed Plaintiff's lungs were well aerated, clear, and that Plaintiff did not have any abnormalities in her chest. (R. at 207.) Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD"). (R. at 210.)

### 2. Evidence On or After May 31, 2002

### Trinitas Hospital Records

An x-ray taken on May 31, 2002, again revealed that Plaintiff's lungs were well aerated and clear. (R. at 226.) Plaintiff's cardiac silhouette was normal in size and configuration and her bone structures were unremarkable. (Id.) The physician's impression was that Plaintiff had a normal chest. (Id.) On June 26, Plaintiff underwent a mammogram which showed no evidence of malignancy. (R. at 227.)

### Medical Report of Dr. R.C. Patel

A medical report completed by Dr. Patel, dated September 18, 2002, stated Plaintiff had normal gait, could walk without assistive devices, showed no gross neurological deficit, and was able to move without any problems. (R. at 232.) Upon physical examining Plaintiff, Dr. Patel reported she was not in any acute distress, had normal breath sounds in both lungs, there was not wheezing, her heart had regular sinus rhythm, her lower extremities had no edema, her reflexes and sensation was normal, her grip in both hands were normal, and her straight leg raising was normal. (R. at 231-32.) Dr. Patel clinically diagnosed Plaintiff with chronic asthma, hepatitis C by history, history of substance abuse, history of stomach ulcer, and musculoskeletal pain in the

3

right lower extremity without any permanent deformity. (R. at 232.)

### Residual Functional Capacity Assessment

On November 11, 2002, Dr. Robert Walsh, a state agency physician, reported that Plaintiff could occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry up to twenty-five pounds, and stand, walk, and sit for about six hours in an eight-hour workday. (R. at 242.) Dr. Walsh stated Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl. (R. at 243.) Dr. Walsh indicated Plaintiff had no manipulative, visual, and communicative limitations. (R. at 244-45.) With respect to Plaintiff's symptoms, Dr. Walsh commented in his judgment, that the severity was not proportional to what would be expected. (R. at 246.) Furthermore, Dr. Walsh stated the alleged effect on function was inconsistent with the medical evidence. (Id.)

### Report of Dr. Serrano

On January 31, 2003, Dr. Serrano diagnosed Plaintiff with bronchitis and prescribed antibiotics for her. (R. at 116.) He reported Plaintiff's asthma condition had remained stable. (Id.) Dr. Serrano stated Plaintiff had neither been hospitalized for asthma, nor been treated her for asthma in the past year. (Id.)

### 3. Non-Medical Evidence After May 31, 2002

### Social Security Forms and Questionnaires

In the Disability Report, dated June 25, 2002, Plaintiff's interviewer indicated Plaintiff was cooperative and had no difficulties with breathing, understanding, concentrating, sitting, standing, and walking. (R. at 75.) Plaintiff, in the section of the form she completed, stated that asthma, lower back, neck pain, COPD, and hepatitis C were limiting her ability to work by

making her very tired. (R. at 78.) Plaintiff stated that her previous job as an intake worker required approximately four hours of walking per day, five hours of standing per day, and two hours of sitting per day. (R. at 79.) The job required lifting and carrying no more than ten pounds of groceries and laundry. (Id.)

In the Pain Report, dated June 26, 2002, Plaintiff explained that she experiences daily, throbbing, on-and-off pain in the lower right side of her back. (R. at 102.) She indicated that the pain interferes with her ability to stand, sit, walk, and lift and that bending, driving long distances, and lifting make the pain worse. Id. Taking advil sometimes provides her with relief. (R. at 103.)

In the Activities of Daily Living Questionnaire, dated July 9, 2002, Plaintiff stated that she spends a typical day watching television, listening to music, reading, writing, and sometimes babysitting her granddaughter. (R. at 87.) She stated that she does not cook and does not drive too often, but cleans rooms and washes dishes. (R. at 88.) Her recreational activities include visiting friends and relatives. Id. Plaintiff also stated that she can walk two blocks before having to rest for ten to fifteen minutes. (R. at 89.)

### 4. Plaintiff's Testimony

At the hearing on January 21, 2004, Plaintiff testified that her hepatitis C causes her to be tired. (R. at 24.) She stated that her asthma and COPD cause her breathing problems. Id. She stated that she did not have a nebulizer at home for her breathing problems. Id. Medication for her breathing included Albuterol, Advair, and Singulair. (Id.) She stated that one of her physicians found that she suffered from some kind of depression. (R. at 26.) She stated that sitting, standing, and walking for thirty to forty-five minutes would cause her discomfort due to

neck and back pain. (R. at 27.)

### C. Decision of the ALJ

After recounting and analyzing the above facts, ALJ Determan determined Plaintiff was not disabled within the meaning of the Act and therefore denied her application for DIB. (R. at 12-16.) Specifically, the ALJ found Plaintiff suffered from hepatitis and asthma, which are severe impairments, but not severe enough to meet one of the impairments listed in Appendix I, Subpart P, Regulations No. 4. (R. at14.) The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work,[1] which therefore meant she could perform work as a receptionist and intake worker, which was her past relevant work. (R. at 15.) In reaching this decision, the ALJ refused to give full credit to Plaintiff's statements regarding her impairments and their impact on her ability to work. (R. at 14.) The ALJ noted that Plaintiff's activities of daily living, which included reading, babysitting, visiting friends and relatives, and driving appeared to be unrestricted. (Id.) The ALJ also noted that Plaintiff did not have a nebulizer and had no recent emergency room visits for her asthma. (Id.)

## II. Discussion

### A. Standard of Review

#### 1. Standard for Entitlement to Benefits under the Act

A claimant is entitled to DIB under the Act only if she satisfies all the relevant requirements of the statute. To establish a valid claim for DIB, the claimant must meet the insured status requirements of 42 U.S.C. § 423(c). Furthermore, the claimant must demonstrate

---

[1] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c). If one can do medium work, one can also do sedentary and light work. Id.

that she was disabled within the meaning of the Act.

## 2. Analysis for Determining Disability

Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Physical or mental impairments are those that "result[] from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Furthermore, an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations provide a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. First, the Commissioner must inquire whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is found to be currently engaged in substantial gainful activity, he will be found not disabled without consideration of his medical condition. 20 C.F.R. § 404.1520(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must then decide whether the claimant suffers a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is not severe, the claimant will be found not disabled. 20 C.F.R. § 404.1520(c). Third, If the claimant is found to be suffering from a severe impairment,

the Commissioner must decide whether the impairment equals or exceeds in severity one of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is listed or is the equivalent to a listed impairment, the Commissioner must find the claimant disabled without consideration of other facts. 20 C.F.R. § 404.1520(d). Fourth, if the impairment is not listed, the Commissioner must consider whether the claimant has sufficient residual functional capacity to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is defined as what the claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). If a claimant has the residual functional capacity to meet the physical and mental demands of his past work, the Commissioner must find him not disabled. 20 C.F.R. § 404.1520(f). Finally, if the claimant cannot perform any past relevant work, the Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether he can perform any other work. 20 C.F.R. § 404.1520(a)(4)(v). If he cannot, the Commissioner will find him disabled. 20 C.F.R. § 404.1520(g). The claimant bears the initial burden of proving that his impairment prevents him from returning to past relevant work. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If the claimant satisfies the first four steps, then the burden shifts to the Commissioner to prove the existence of work that exists in significant numbers in the national economy and that the claimant could perform. Id.

### B. Scope of Review

A reviewing court must uphold the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "more than a mere scintilla." Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Perales, 402 U.S. at 401 (quoting Consol. Edison, 305 U.S. at 229).  However, substantial evidence "does not mean a large or considerable amount of evidence . . . ."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence may be "less than a preponderance."  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

"The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner."  Claussen v. Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983)).  The standard affords "deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  "The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable."  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)).  Therefore, a court may not "set the Commissioner's decision aside if it is supported by substantial evidence, even if [the

reviewing court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court has a duty to review the evidence in its totality. Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf, 972 F. Supp. at 284 (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)) (internal citation omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 584-86 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is essential to a meaningful court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (internal citation omitted)). Nevertheless, the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### III. Analysis

Plaintiff contends that ALJ Determan erred by: (1) failing to properly consider Plaintiff's

subjective complaints; (2) failing to properly explain his evidentiary basis for the RFC determination; and (3) failing to properly discuss the requirements of Plaintiff's past relevant work before concluding that she could perform her past relevant work. (Pl.'s Br. 9-19.)  For the reasons set forth below, this Court affirms the final decision of the Commissioner.

The Commissioner's final decision must be upheld if there is substantial evidence to support that decision.  Here, substantial evidence exists.  Plaintiff asserts that she became disabled and unable to work as of May 31, 2002.  However, objective medical evidence viewed from that date does not support her claim.  An x-ray of Plaintiff's chest taken on May 31, 2002, failed to reveal any significant medical problems.  Instead, the x-ray showed her lungs were well-aerated and clear.  Dr. Patel's September 18, 2002 report also supported a finding that Plaintiff was not disabled.  In that report, Dr. Patel stated Plaintiff had normal gait, could walk without assistive devices, showed no gross neurological deficit, could move fine, was not in any acute distress, had normal breathing sounds in both lungs, was not wheezing, had regular sinus rhythm in her heart, had no edema in her lower extremities, had normal reflexes and sensation, had normal grip in both hands, and had normal straight leg raising.

Dr. Walsh, in a November 11, 2002 report, stated Plaintiff could occasionally lift up to fifty pounds, frequently lift up to twenty-five pounds, and stand, walk, and sit for about six hours in an eight-hour workday.  Dr. Walsh also stated that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl, and that Plaintiff had no manipulative, visual, or communicative limitations.  More importantly, Dr. Walsh noted that Plaintiff's allegations of functional impairment were inconsistent with her medical evidence.

On January 31, 2003, Dr. Serrano, after prescribing antibiotics for Plaintiff's bronchitis,

reported that her asthma condition, which had not required hospitalization or emergency treatment in the past year, had remained stable. The weight of the medical evidence supports a finding of non-disability. It is difficult to point to any objective evidence that would support a different conclusion.

Contrary to Plaintiff's arguments, the ALJ properly considered her subjective complaints. "An ALJ must give serious consideration to a [Plaintiff's] subjective complaints of pain . . . ." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). However, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft, 181 F.3d at 362. "[S]ubjective complaints must be substantiated by medical evidence." Williams, 970 F.2d at 1186. "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability [under the Act]." 42 U.S.C. § 423(d)(5)(A). The Plaintiff bears the burden to "show that he has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work." Williams, 970 F.2d at 1186 (citing Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984)). Ultimately, the ALJ has discretion "to evaluate the credibility of a Plaintiff's testimony and to render an independent judgment in light of the medical findings and related evidence regarding the true extent of such disability." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) aff'd, 85 F.3d 611 (3d Cir. 1996) (citing LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)).

In concluding that Plaintiff's statements regarding the effect of her impairments on her ability to work were not entirely credible, the ALJ stated that "[h]er asthma seems under control with present treatment." Such an inference is supported by objective medical evidence. As

explained above, an x-ray revealed that Plaintiff had normal lungs, Dr. Patel reported that her breathing sounds were normal, and Dr. Serrano reported that her asthma had stabilized. The ALJ also stated that "[Plaintiff's] activities of . . . reading, baby sitting, driving, and visiting friends and relatives . . . appear to be unrestricted." This inference is also supported by the objective medical evidence. Dr. Patel reported that Plaintiff had normal gait, could walk without assistive devices, showed no gross neurological deficit, could move fine, was not in any acute distress, had normal reflexes and sensation, had normal grip in both hands, and had normal straight leg raising. Dr. Walsh stated that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl and that Plaintiff had no manipulative, visual, or communicative limitations. A reasonable person could take such evidence to indicate that Plaintiff could perform activities without restriction, especially due to the fact that the only evidence suggesting otherwise are Plaintiff's subjective complaints. Furthermore, the credibility of Plaintiff's complaints is questionable because, as Dr. Walsh noted, Plaintiff's allegations of functional impairment are inconsistent with the objective medical evidence. As such, the ALJ properly exercised his discretion to evaluate Plaintiff's subjective complaints in light of the objective evidence and render an independent judgment regarding the true extent of the alleged disability.

Plaintiff next argues the ALJ failed to properly explain his evidentiary basis for the RFC determination. The standard for explaining the evidence used to reach an RFC determination was described in <u>Burnett</u>:

> In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

13

220 F.3d at 121 (citations and internal quotations omitted).

After explaining his reasons for discrediting Plaintiff's subjective complaints, the ALJ explained in his decision, "[a]ccordingly, the [ALJ] finds the [Plaintiff] retains the residual functional capacity for medium work."  By using the word "accordingly," the ALJ indicated which evidence he discounted in reaching his RFC determination: Plaintiff's subjective complaints.  Presumably, if not for the subjective complaints, the ALJ would have found that Plaintiff had no limitations on RFC.  This is because, except for the subjective complaints, there is no other evidence to support a finding of disability.

Finally, Plaintiff asserts that the ALJ failed to properly discuss the requirements of her past relevant work before concluding that she could perform this work.  The ALJ concluded that Plaintiff could return to her past relevant work as a receptionist and an intake worker.  Here, the record reveals that Plaintiff gave a description of her prior job as an intake worker, which falls within the limitations of medium work.  (R. at 79.)  The objective medical evidence as well as Plaintiff's testimony on the activities she is able to perform demonstrate she is capable of medium work.  Therefore, Plaintiff's argument is without merit.

## IV. Conclusion

For the reasons stated above, this Court **affirms** the Commissioner's determination that the Plaintiff was not disabled.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

Date:   April 21, 2006
Orig:   Clerk's Office
cc:     All parties
        File